## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DOMETIC CORPORATION, a Delaware
Corporation,

        Plaintiff,

vs.

JOHN BARNETTE, an individual,
ALFREDO FERNANDEZ, an individual,
JOHNSON NACIUS, an individual, AQUA
AIR, LLC, a Florida Limited Liability
Company, and FRIGIBAR, LLC, a Florida
Limited Liability Company,

        Defendants.

Civil Action No.

## COMPLAINT

Plaintiff Dometic Corporation ("Dometic"), by and through its undersigned counsel, hereby files this Complaint against Defendants John Barnette ("Barnette"), Alfredo Fernandez ("Fernandez"), Johnson Nacius ("Nacius"), Aqua Air, LLC ("Aqua Air"), and Frigibar, LLC ("Frigibar") (collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     This is an action for damages and injunctive relief against Dometic's former employees, Barnette, Fernandez, and Nacius (collectively, the "Former Employees"), as well as Dometic's direct competitors, Aqua Air and Frigibar, premised on Dometic's claims for breach of contract and tortious interference with contractual and business relationships.

2.     As part of their employment with Dometic, the Former Employees voluntarily and knowingly entered into employment agreements containing various restrictive covenants, including non-compete provisions, non-solicitation provisions, and confidentiality provisions. However, in violation of these restrictive covenants, the Former Employees began working for

Aqua Air and Frigibar almost immediately following their respective resignations from Dometic, performing the same and/or similar duties at Aqua Air and Frigibar as those they performed at Dometic within the restricted geographic area defined by the employment agreements. In so doing, the Former Employees already have or inevitably will use, reference, and/or disclose Dometic's confidential, proprietary information in furtherance of their relationship with Aqua and Frigibar and in violation of their employment agreements with Dometic.

3.      In addition, in further violation of his respective employment agreement, Barnette has solicited Dometic employees to work for Aqua Air and Frigibar.

4.      Furthermore, Aqua Air and Frigibar, which are, on information and belief, owned by Seann Pavlik, had knowledge of the restrictive post-employment provisions in the Former Employees' respective employment agreements with Dometic. Despite having knowledge of the restrictive covenants, Aqua Air and Frigibar specifically targeted and solicited the Former Employees for employment and thereby induced the Former Employees to breach their respective employment agreements and end their business relationships with Dometic.

5.      As a result of Defendants' wrongful conduct, Dometic has suffered and continues to suffer irreparable and monetary harm, including the threatened loss of business and customers, and other irreparable harm, as described below.

## PARTIES

6.      Dometic is a Delaware Corporation with its principal place of business located at O'Hare Plaza II, 8755 West Higgins Road, Suite 620, Chicago, IL 60631, and with offices within this District located at 2000 N Andrews Ave, Pompano Beach, FL 33069.

7.      Defendant John Barnette is a resident of Broward County, Florida with a residence in Margate, FL.

2

8.      Defendant Alfredo Fernandez is a resident of Broward County, Florida with a residence in Pompano Beach, FL.

9.      Defendant Johnson Nacius is a resident of Broward County with a residence in Laud Lakes, Florida.

10.     Defendant Aqua Air, LLC is a Florida Limited Liability Company with its principal place of business located at 1632 NE 12th Terrace, Fort Lauderdale, FL 33305.

11.     Defendant Frigibar, LLC is a Florida Limited Liability Company with its principal place of business located at 1632 NE 12th Terrace, Fort Lauderdale, FL 33305.

12.     Both Aqua Air and Frigibar are owned and operated by Seann Pavlik.

## JURISDICTION

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Dometic and Defendants, and the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Dometic's claims occurred in, arose in and/or relate to this District, and because Defendants are subject to personal jurisdiction in this District and transact business in this District.

## GENERAL ALLEGATIONS

**A.      Dometic's Business**

15.     Dometic is part of a global company that develops market-leading consumer products and solutions for use in outdoors, vehicles, residential homes, marine and professional space.

16.     Dometic maintains an office in Pompano Beach, which manufactures and sells various marine-related products.

3

17.     Dometic has invested significant financial resources into developing its marine business and its relationship with its marine customers.

18.     Dometic employs a sales team to interact directly with Dometic's existing and potential customers. The sales team has intimate knowledge of and access to proprietary information concerning Dometic's marine products, including confidential sales, product, and pricing information. Furthermore, the sales team also has access to confidential customer information.

**B.      Barnette's Employment Agreement with Dometic**

19.     Barnette began working for Dometic in its Marine Division based in Dometic's Pompano Beach office. In April of 2022, Barnette was promoted to Sales Account Manager for Dometic's Marine Division and continued to work from Dometic's Pompano Beach office.

20.     In his role as the Sales Account Manager, Barnette was responsible for, *inter alia,* developing and overseeing sales, marketing and service activities for Dometic's products in the U.S. market, maintaining and developing customer relationships, ensuring customer relations and product order delivery, coordinating and implementing proprietary training programs with customers to educate customers on products, and providing onsite support and value to customers.

21.     On April 11, 2022, Dometic and Barnette entered into an "Employee Confidentiality Non-Competition and Proprietary Rights Agreement" (the "Barnette Agreement"). A copy of the Barnette Agreement is attached as Exhibit 1 and is incorporated herein by reference.

22.     In the Barnette Agreement, Barnette agreed that, during his employment with Dometic and for a period of one (1) year following his termination of employment with Dometic, regardless of the reason for termination, Barnette will not:

> "Directly or indirectly (whether individually or as an owner, employee, co-venturer, agent or in any other capacity of any entity), perform for any Competing Business any duties within, or that relate to the Competing Business, or conduct

business within, the Territory (as defined below), which duties are the same as or similar to those performed by **EMPLOYEE** during EMPLOYEE's employment with **DOMETIC;** or

Accept any position or affiliation with a Competing Business in which **EMPLOYEE** would or may, in the regular and ordinary course of business, inevitably disclose or use, be called upon, required, or expected to disclose or use, base judgments on, or otherwise use or disclose Confidential Information or trade secrets that **EMPLOYEE** received, obtained, learned or acquired during **EMPLOYEE's** employment with **DOMETIC**…"

Exhibit 1 §§ 2(b)-2(c).

23.     The Barnette Agreement defined "Competing Business" to mean:

"any business that provides or solicits sales or purchases of products and/or services of any nature in competition with any product and/or service being provided or offered by, or in the business plans of, Dometic as of the date that the business relationship between the parties terminates."

*Id*. § 2(a).

24.     Additionally, for one (1) year following the termination of Barnette's employment with Dometic, whether such termination was voluntary or involuntarily, Barnette agreed that he would not:

"attempt to interfere with the relationship between Dometic and its other employees or to hire or aid in the hiring by any other person or entity, of any of DOMETIC'S employees;

engage for EMPLOYEE'S own benefit or any other person or entity, in any activity of employment in the performance of which it could be reasonable anticipated that EMPLOYEE would be required or expected to use or disclose Confidential Information obtained while an employee of DOMETIC;

directly or indirectly encourage any employee of DOMETIC to engage in any competitive activity that EMPLOYEE is prohibited from engaging under the terms of this Agreement…."

*Id.* § 4(a)-(c).

25.     Barnette further agreed that he would not:

"at any time before or after termination of employment with DOMETIC, use, divulge, disclose or communicate, or cause any other person or entity to use,

divulge, disclose or communicate, to any person, firm, corporation or entity, either directly or indirectly, in any manner whatsoever, any Confidential Information…"

*Id.* § 1(b).

26.     Given the critical nature of Dometic's relationship with its customers and Barnette's access to Dometic's confidential information, Barnette also agreed that, in the event of a breach of the Barnette Agreement, Dometic would be entitled to injunctive relief as follows:

"Remedies for Breach of Restrictive Covenants. EMPLOYEE acknowledges that DOMETIC's remedy at law for any breach by EMPLOYEE of EMPLOYEE's obligations set forth above would be inadequate, and EMPLOYEE specifically agrees that DOMETIC shall be entitled to injunctive relief against EMPLOYEE upon proof of potential or likely damages, but without the necessity of posting a bond, in addition to any other remedies available at law or in equity, including compensatory damages, costs, expenses and reasonable attorneys' fees and the right to set-off in enforcing any of its rights under this Agreement."

*Id.* § 6.

27.     Barnette further agreed that, if Dometic prevails in a legal or equitable action for breach of the Barnette Agreement, Dometic shall be entitled to "recover its reasonable costs, expenses, and reasonable attorneys' fees." *Id*.

28.     Without the protections of the Barnette Agreement, including the post-employment restrictions governing the solicitation of Dometic customers, Dometic would not have offered Barnette a promotion and continued employment nor would it have permitted Barnette to access its confidential information or customer relationships.

29.     During Barnette's employment with Dometic, and to facilitate Barnette's performance of his job responsibilities, Dometic spent substantial time, effort and money training Barnette, which included providing him with access to Dometic's confidential and proprietary information.

30.     By virtue of his role at Dometic, Barnette also had ongoing access to Dometic's confidential client, product and pricing information. Barnette also had ongoing direct contact with Dometic's customers.

**C.     Barnette's Breach of the Barnette Agreement**

31.     On or about January 27, 2023, Barnette resigned from his position at Dometic.

32.     Immediately following his departure from Dometic, and within less than one year of his resignation from Dometic, Barnette began working for and/or with Aqua Air and Frigibar. In this role, Barnette has appeared at tradeshows and interacted with clients on behalf of both Aqua Air and Frigibar. On information and belief, Barnette is currently employed by Aqua Air and Frigibar.

33.     Aqua Air and Frigibar are direct competitors of Dometic in the marine industry. Like Dometic, Aqua Air and Frigibar design, build and/or sell products for the marine industry. Specifically, Aqua Air designs and builds chill-water air conditioning systems for the marine industry. Likewise, Frigibar is a manufacturer of marine refrigeration products for the marine industry. As such, Aqua Air and Frigibar are competing businesses as that term is defined in the Barnette Agreement.

34.     Aqua Air's offices are located only 8 miles away from where Barnette worked for Dometic. On information and belief, Barnette conducts his business, either directly or remotely, from Aqua Air's offices.

35.     As part of his new employment with Aqua Air and Frigibar, Barnette has been and will be using Dometic's confidential information, including its proprietary business plans, budgets, financial information, research data, marketing and sales information, and pricing, to compete directly with Dometic in the same geographic area and the same market.

36.     In addition, following submission of his own notice of resignation to Dometic, Barnette solicited and induced JoAnn Evans ("Evans"), who worked as a sales coordinator in Dometic's Pompano Beach office, to terminate her employment with Dometic in order to take employment with Aqua Air and Frigibar. On information and belief, Evans is now employed by Aqua Air and Frigibar.

37.     Further, following his employment with Aqua Air and Frigibar, Barnette also solicited and induced Defendant Fernandez, who worked as an assembler in Dometic's Pompano Beach office, to terminate his employment with Dometic in order to take employment with Aqua Air. On information and belief, Fernandez is now employed by Aqua Air and Frigibar.

38.     On January 27, 2023, through counsel, Dometic sent a cease-and-desist letter to Barnette reminding him of his continued obligations under the Barnette Agreement.

39.     As of the date of filing this Complaint, Barnette has not ceased his unlawful activity and has continued working for Aqua Air and Frigibar performing the same or similar tasks as those Barnette performed for Dometic.

40.     Unless restrained, Barnette's breach of the Barnette Agreement will continue, causing irreparable harm to Dometic for which there is no adequate remedy at law. Such actions have also caused, and will continue to cause, financial damages to Dometic, which have yet to be determined.

## C.     Fernandez's Employment Agreement with Dometic

41.     On January 16, 2006, Fernandez began working for Dometic as an assembler/bench mechanic in the Marine Division based in Dometic's Pompano Beach office. In that role, Fernandez was responsible for, *inter alia*, assembly operations that involved producing and assembling components for Dometic's marine-related products. By virtue of his role, Fernandez

had direct access to Dometic's confidential and proprietary business information pertaining to the manufacturing and assembly of its marine-related products.

42.     On July 23, 2024, while an employee of Dometic, Dometic and Fernandez entered into an "Employee Confidentiality Non-Competition and Proprietary Rights Agreement" (the "Fernandez Agreement"). A copy of the Fernandez Agreement is attached as Exhibit 2 and is incorporated herein by reference.

43.     In the Fernandez Agreement, Fernandez agreed that, during his employment with Dometic and for a period of one (1) year following his termination of employment with Dometic, regardless of the reason for termination, Fernandez will not:

> "Directly or indirectly (whether individually or as an owner, employee, co-venturer, agent or in any other capacity of any entity), perform for any Competing Business any duties within, or that relate to the Competing Business, or conduct business within, the Territory (as defined below), which duties are the same as or similar to those performed by **EMPLOYEE** during EMPLOYEE's employment with **DOMETIC;** or

> Accept any position or affiliation with a Competing Business in which **EMPLOYEE** would or may, in the regular and ordinary course of business, inevitably disclose or use, be called upon, required, or expected to disclose or use, base judgments on, or otherwise use or disclose Confidential Information or trade secrets that **EMPLOYEE** received, obtained, learned or acquired during **EMPLOYEE's** employment with **DOMETIC**…"

Exhibit 2 §§ 2(b)-2(c).

44.     The Fernandez Agreement defined "Competing Business" to mean:

> "any business that provides or solicits sales or purchases of products and/or services of any nature in competition with any product and/or service being provided or offered by, or in the business plans of, Dometic as of the date that the business relationship between the parties terminates."

*Id*. § 2(a).

45.     Additionally, for one (1) year following the termination of Fernandez's employment with Dometic, whether such termination was voluntary or involuntarily, Fernandez agreed that he would not:

> "engage for EMPLOYEE'S own benefit or any other person or entity, in any activity of employment in the performance of which it could be reasonable anticipated that EMPLOYEE would be required or expected to use or disclose Confidential Information obtained while an employee of DOMETIC."

*Id.* § 4(b).

46.     Fernandez further agreed that he would not:

> "at any time before or after termination of employment with DOMETIC, use, divulge, disclose or communicate, or cause any other person or entity to use, divulge, disclose or communicate, to any person, firm, corporation or entity, either directly or indirectly, in any manner whatsoever, any Confidential Information…"

*Id.* § 1(b).

47.     Given the critical nature of Dometic's relationship with its customers and Fernandez's access to Dometic's confidential information, Fernandez also agreed that, in the event of a breach of the Fernandez Agreement, Dometic would be entitled to injunctive relief as follows:

> "Remedies for Breach of Restrictive Covenants. EMPLOYEE acknowledges that DOMETIC's remedy at law for any breach by EMPLOYEE of EMPLOYEE's obligations set forth above would be inadequate, and EMPLOYEE specifically agrees that DOMETIC shall be entitled to injunctive relief against EMPLOYEE upon proof of potential or likely damages, but without the necessity of posting a bond, in addition to any other remedies available at law or in equity, including compensatory damages, costs, expenses and reasonable attorneys' fees and the right to set-off in enforcing any of its rights under this Agreement."

*Id.* § 6.

48.     Fernandez further agreed that, if Dometic prevails in a legal or equitable action for breach of the Fernandez Agreement, Dometic shall be entitled to "recover its reasonable costs, expenses, and reasonable attorneys' fees." *Id.*

LEGAL\77652544\1

49.     Without the protections of the Fernandez Agreement, including the post-employment restrictions governing the solicitation of Dometic customers, Dometic would not have offered Fernandez employment nor would it have permitted Fernandez to access its confidential information.

50.     During Fernandez's employment with Dometic, and to facilitate Fernandez's performance of his job responsibilities, Dometic spent substantial time, effort and money training Fernandez as an assembler of Dometic's marine-related products, which included providing him with access to Dometic's confidential and proprietary information pertaining to the production and assembly of such products.

51.     By virtue of his role at Dometic, Fernandez also had ongoing access to Dometic's confidential and proprietary information pertaining to the production and assembly of Dometic's marine-related products.

**D.     Fernandez's Breach of the Fernandez Agreement**

52.     On or about April 4, 2025, Fernandez resigned from his position at Dometic. At the time, Fernandez informed multiple Dometic employees, including his supervisor, coworkers, the Assistant General Manager, and the Vice President of Operations, that he was retiring and would be moving to the Dominican Republic.

53.     In reality, immediately following his departure from Dometic, and less than one year following his resignation from Dometic, Fernandez began working for and/or with Aqua Air and Frigibar. On information and belief, Fernandez is currently employed by Aqua Air and Frigibar, which constitute competing businesses as that term is defined in the Fernandez Agreement.

54.     Aqua Air's offices are located only 8 miles away from where Fernandez worked for Dometic. On information and belief, Fernandez conducts his business, either directly or remotely, from Aqua Air's offices.

55.     As part of his new employment with Aqua Air and/or Frigibar, Fernandez has been and will be using Dometic's confidential information, including its proprietary methods, processes, sources, and technical data, to compete directly with Dometic in the same geographic area and the same market.

56.     Unless restrained, Fernandez's breach of the Fernandez Agreement will continue, causing irreparable harm to Dometic for which there is no adequate remedy at law. Such actions have also caused, and will continue to cause, financial damages to Dometic, which have yet to be determined.

**E.     Nacius's Employment Agreement with Dometic**

57.     On September 10, 2018, Nacius began working for Dometic as an assembler/bench mechanic in the Marine Division based in Dometic's Pompano Beach office. In that role, Nacius was responsible for, *inter alia*, assembly operations that involved producing and assembling components for Dometic's marine-related products. By virtue of his role, Nacius had direct access to Dometic's confidential and proprietary business information pertaining to the manufacturing and assembly of its marine-related products.

58.     On July 23, 2024, while an employee of Dometic, Nacius executed an employment agreement ("Nacius Agreement"). A copy of the Nacius Agreement is attached as Exhibit 3 and is incorporated herein by reference.

59.     In the Nacius Agreement, Nacius agreed that, during his employment with Dometic and for a period of one (1) year following his termination of employment with Dometic, regardless of the reason for termination, Fernandez will not:

"Directly or indirectly (whether individually or as an owner, employee, co-venturer, agent or in any other capacity of any entity), perform for any Competing Business any duties within, or that relate to the Competing Business, or conduct business within, the Territory (as defined below), which duties are the same as or similar to those performed by **EMPLOYEE** during EMPLOYEE's employment with **DOMETIC;** or

Accept any position or affiliation with a Competing Business in which **EMPLOYEE** would or may, in the regular and ordinary course of business, inevitably disclose or use, be called upon, required, or expected to disclose or use, base judgments on, or otherwise use or disclose Confidential Information or trade secrets that **EMPLOYEE** received, obtained, learned or acquired during **EMPLOYEE's** employment with **DOMETIC**…"

Exhibit 3 §§ 2(b)-2(c).

60.     The Nacius Agreement defined "Competing Business" to mean:

"any business that provides or solicits sales or purchases of products and/or services of any nature in competition with any product and/or service being provided or offered by, or in the business plans of, Dometic as of the date that the business relationship between the parties terminates."

*Id*. § 2(a).

61.     Additionally, for one (1) year following the termination of Nacius's employment with Dometic, whether such termination was voluntary or involuntarily, Nacius agreed that he would not:

"engage for EMPLOYEE'S own benefit or any other person or entity, in any activity of employment in the performance of which it could be reasonable anticipated that EMPLOYEE would be required or expected to use or disclose Confidential Information obtained while an employee of DOMETIC."

*Id.* § 4(b).

62.     Nacius further agreed that he would not:

"at any time before or after termination of employment with DOMETIC, use, divulge, disclose or communicate, or cause any other person or entity to use, divulge, disclose or communicate, to any person, firm, corporation or entity, either directly or indirectly, in any manner whatsoever, any Confidential Information…"

*Id.* § 1(b).

63.     Given the critical nature of Dometic's relationship with its customers and Nacius's access to Dometic's confidential information, Nacius also agreed that, in the event of a breach of the Nacius Agreement, Dometic would be entitled to injunctive relief as follows:

> "Remedies for Breach of Restrictive Covenants. EMPLOYEE acknowledges that DOMETIC's remedy at law for any breach by EMPLOYEE of EMPLOYEE's obligations set forth above would be inadequate, and EMPLOYEE specifically agrees that DOMETIC shall be entitled to injunctive relief against EMPLOYEE upon proof of potential or likely damages, but without the necessity of posting a bond, in addition to any other remedies available at law or in equity, including compensatory damages, costs, expenses and reasonable attorneys' fees and the right to set-off in enforcing any of its rights under this Agreement."

*Id.* § 6.

64.     Nacius further agreed that, if Dometic prevails in a legal or equitable action for breach of the Nacius Agreement, Dometic shall be entitled to "recover its reasonable costs, expenses, and reasonable attorneys' fees." *Id*.

65.     Without the protections of the Nacius Agreement, including the post-employment restrictions governing the solicitation of Dometic customers, Dometic would not have offered Nacius employment nor would it have permitted Fernandez to access its confidential information.

66.     During Nacius's employment with Dometic, and to facilitate Nacius's performance of his job responsibilities, Dometic spent substantial time, effort and money training Nacius as an assembler of Dometic's marine-related products, which included providing him with access to Dometic's confidential and proprietary information pertaining to the production and assembly of such products.

67.     By virtue of his role at Dometic, Nacius also had ongoing access to Dometic's confidential and proprietary information pertaining to the production and assembly of Dometic's marine-related products.

**D.     Nacius's Breach of the Fernandez Agreement**

14

LEGAL\77652544\1

68.     On or about May 8, 2025, Nacius resigned from his position at Dometic. At the time, Nacius told multiple Dometic employees, including his supervisor and the Assistant General Manager, that he was moving to Orlando, Florida to become a truck driver.

69.     In reality, immediately following his departure from Dometic, and less than one year following his resignation from Dometic, Nacius began working for and/or with Aqua Air and Frigibar. On information and belief, Nacius is currently employed by Aqua Air and Frigibar, which constitute competing businesses as that term is defined in the Nacius Agreement.

70.     Aqua Air's offices are located only 8 miles away from where Nacius worked for Dometic. On information and belief, Nacius conducts his business, either directly or remotely, from Aqua Air's offices.

71.     As part of his new employment with Aqua Air and/or Frigibar, Nacius has been and will be using Dometic's confidential information, including its proprietary methods, processes, sources, and technical data, to compete directly with Dometic in the same geographic area and the same market.

72.     Unless restrained, Nacius's breach of the Nacius Agreement will continue, causing irreparable harm to Dometic for which there is no adequate remedy at law. Such actions have also caused, and will continue to cause, financial damages to Dometic, which have yet to be determined.

**E.     Aqua Air's and Frigibar's Tortious Interference**

73.     On information and belief, Aqua Air and Frigibar had full knowledge of Dometic's existing relationships and employment agreements with the Former Employees. Indeed, on February 1, 2023, through counsel, Dometic sent a letter to Aqua Air informing it of its contractual relationship with Barnette and reminding Aqua Air of Barnette's obligations under the Barnette Agreement. That letter was sent by both Federal Express and U.S. Mail. Although Aqua Air

LEGAL\77652544\1

intentionally rejected delivery of the copy sent by Federal Express, the copy sent by U.S. mail was deemed received on February 1, 2023.

74.     On information and belief, notwithstanding their knowledge of Dometic's business relationships and employment contracts, Aqua Air and Frigibar intentionally targeted and/or recruited the Former Employees to improperly obtain, among other things, their knowledge of Dometic's confidential and proprietary information.

75.     Accordingly, Aqua Air and Frigibar knowingly and intentionally interfered with Dometic's business relationships and employment contracts. Aqua Air's and Frigibar's interference with these relationships and contracts has allowed Aqua Air and Frigibar to improperly gain access to Dometic's proprietary and confidential information and thereby secure an unfair business advantage.

76.     In knowingly inducing the Former Employees to breach their respective employment agreements and end their business relationships with Dometic, Aqua Air and Frigibar engaged in improper and unjustified conduct. Among other things, Aqua Air has induced the Former Employees to breach their respective employment agreements and end their business relationships with Dometic for the purpose of improperly obtaining the Former Employees' knowledge of Dometic's confidential and proprietary information. Indeed, since Aqua Air began soliciting Dometic employees, it has expanded its product portfolio to include a variety of new product lines that are the same or substantially the same as the product lines historically made and sold by Dometic.

77.     In addition, on information and belief, Aqua Air and Frigibar conspired with Fernandez and Nacius to misrepresent and obfuscate the true nature of their employment following their resignation from Dometic. Further, on information and belief, Aqua Air and Frigibar

LEGAL\77652544\1

conspired with Barnette to obtain information on and solicit additional Dometic employees to end their business relationships with Dometic. Moreover, based on the repeated recruitment and hiring of Dometic's employees, Aqua Air and Frigibar are clearly engaged in a calculated campaign to interfere with Dometic's employment agreements and end the business relationships that Dometic has with its employees so that Aqua and Frigibar can improperly gain access to Dometic's proprietary and confidential information.

78.     Unless restrained, Aqua Air's and Fribigar's tortious interference with Dometic's business relationships and employment contracts will continue, causing irreparable harm to Dometic for which there is no adequate remedy at law. Such actions have also caused, and will continue to cause, financial damages to Dometic, which have yet to be determined.

### <u>COUNT I</u>
### <u>BREACH OF CONTRACT</u>
#### <u>(Against Barnette)</u>

79.     Dometic realleges and incorporates the preceding factual allegations set forth above.

80.     As set forth in detail above, Barnette entered into a lawful and enforceable employment agreement with Dometic. *See* Exhibit 1.

81.     Barnette was aware of the express terms of the Barnette Agreement, which prohibited him from engaging in any competing business for a period of one year after he ceased working for Dometic and which also prohibited him from soliciting Dometic's employees after he ceased working for Dometic.  Furthermore, Barnette knew that the Barnette Agreement prevented him from disseminating Dometic's trade secrets and confidential, proprietary client information. Barnette's knowledge of the terms of the Barnette Agreement is indicated by his signature on the Barnette Agreement.

82.     Dometic has fulfilled all of its obligations under the Barnette Agreement, including but not limited to providing all consideration and monies owed to Barnette.

83.     Barnette has breached the non-competition clause in the Barnette Agreement by becoming employed with Aqua Air and/or Frigibar, direct competitors of Dometic, that are located within 8 miles of Dometic's offices, immediately following his resignation with Dometic.

84.     Barnette has breached, and continues to be in breach of, the confidentiality provision in the Barnette Agreement by using and/or disclosing Dometic's confidential information (as that term is defined in Paragraph l(b) of the Barnette Agreement) that was provided to him during the course of his employment with Dometic.

85.     Barnette has breached, and continues to be in breach of, the non-solicitation clause of the Barnette Agreement by soliciting and/or inducing Dometic's employees, including but not limited to Evans and Fernandez, to work for Aqua Air and Frigibar while employed by Dometic and/or to engage in competitive activity with Dometic following their resignation from Dometic.

86.     The restrictive covenants in the Barnette Agreement are reasonable in terms of time, area, and line of business.

87.     The restrictive covenants in the Barnette Agreement are supported by legitimate business interests, including but not limited to Dometic's substantial relationships with specific prospective and existing customers and distributors and employees, and customer goodwill, as well as the extensive and costly efforts that Dometic has spent creating the proprietary information that was provided to Barnette in connection with his role as Sales Account Manager.

88.     All conditions precedent to the bringing of this action have occurred, been performed or been waived.

89.     Dometic has suffered, and continues to suffer, irreparable harm as a direct and proximate result of Barnette's breach of the Barnette Agreement. For his continued breach of the Barnette Agreement, there is no adequate remedy at law that might address the irreparable injury caused by Barnette's continued acts.

90.     As a result of Barnette's breach of the Barnette Agreement, Dometic has sustained, and continues to sustain, monetary damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF CONTRACT**
**(Against Fernandez)**

91.     Dometic realleges and incorporates herein the factual allegations set forth above.

92.     As set forth in detail above, Fernandez entered into a lawful and enforceable employment agreement with Dometic. *See* Exhibit 2.

32.     Fernandez was aware of the express terms of the Fernandez Agreement, which prohibited him from engaging in any competing business for a period of one year after he ceased working for Dometic. Furthermore, Fernandez knew that the Fernandez Agreement prevented him from disseminating Dometic's trade secrets and confidential, proprietary client information. Fernandez's knowledge of the terms of the Fernandez Agreement is indicated by his signature on the Fernandez Agreement.

93.     Dometic has fulfilled all of its obligations under the Fernandez Agreement, including but not limited to providing all consideration and monies owed to Fernandez.

94.     Fernandez has breached the non-competition clause in the Fernandez Agreement by becoming employed with Aqua Air and/or Frigibar, direct competitors of Dometic, that are located within 8 miles of Dometic's offices, immediately following his departure from Dometic.

95.     Fernandez has breached, and continues to be in breach of, the confidentiality provision in the Fernandez Agreement by using and/or disclosing Dometic's confidential

19

information (as that term is defined in paragraph l(b) of the Fernandez Agreement) that was provided to him during the course of his employment with Dometic.

96.     The restrictive covenants in the Fernandez Agreement are reasonable in terms of time, area, and line of business.

97.     The restrictive covenants in the Fernandez Agreement are supported by legitimate business interests, including but not limited to Dometic's substantial relationships with specific prospective and existing customers and distributors and employees, and customer goodwill, as well as the extensive and costly efforts that Dometic has spent creating the proprietary information that was provided to Fernandez in connection with his role as an assembler.

98.     All conditions precedent to the bringing of this action have occurred, been performed or been waived.

99.     Dometic has suffered, and continues to suffer, irreparable harm as a direct and proximate result of Fernandez's breach of the Fernandez Agreement. For his continued breach of the Fernandez Agreement, there is no adequate remedy at law that might address the irreparable injury caused by Fernandez's continued acts.

<u>**COUNT III**</u>
<u>**BREACH OF CONTRACT**</u>
<u>**(Against Nacius)**</u>

100.    Dometic realleges and incorporates herein the factual allegations set forth above.

101.    As set forth in detail above, Nacius entered into a lawful and enforceable employment agreement with Dometic. *See* Exhibit 3.

33.     Nacius was aware of the express terms of the Nacius Agreement, which prohibited him from engaging in any competing business for a period of one year after he ceased working for Dometic. Furthermore, Nacius knew that the Nacius Agreement prevented him from disseminating

Dometic's trade secrets and confidential, proprietary client information. Nacius knowledge of the terms of the Fernandez Agreement is indicated by his signature on the Nacius Agreement.

102.    Dometic has fulfilled all of its obligations under the Nacius Agreement, including but not limited to providing all consideration and monies owed to Nacius.

103.    Nacius has breached the non-competition clause in the Nacius Agreement by becoming employed with Aqua Air and/or Frigibar, direct competitors of Dometic, that are located within 8 miles of Dometic's offices, immediately following his departure from Dometic.

104.    Nacius has breached, and continues to be in breach of, the confidentiality provision in the Nacius Agreement by using and/or disclosing Dometic's confidential information (as that term is defined in paragraph l(b) of the Nacius Agreement) that was provided to him during the course of his employment with Dometic.

105.    The restrictive covenants in the Nacius Agreement are reasonable in terms of time, area, and line of business.

106.    The restrictive covenants in the Nacius Agreement are supported by legitimate business interests, including but not limited to Dometic's substantial relationships with specific prospective and existing customers and distributors and employees, and customer goodwill, as well as the extensive and costly efforts that Dometic has spent creating the proprietary information that was provided to Nacius in connection with his role as an assembler.

107.    All conditions precedent to the bringing of this action have occurred, been performed or been waived.

108.    Dometic has suffered, and continues to suffer, irreparable harm as a direct and proximate result of Nacius's breach of the Nacius Agreement. For his continued breach of the

Nacius Agreement, there is no adequate remedy at law that might address the irreparable injury caused by Nacius's continued acts.

<u>**COUNT IV**</u>
<u>**TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**</u>
<u>**(Against Aqua Air and Frigibar)**</u>

109.    Dometic realleges and incorporates the factual allegations set forth above.

110.    As set forth in detail above, the Former Employees all entered into valid and enforceable employment agreements with Dometic.

111.    Aqua Air and Frigibar are and were aware of the Former Employees' employment agreements, including the restrictive covenant obligations contained therein that precluded the Former Employees from working for a competitor for one (1) year following the termination of their employment from Dometic.

112.    Despite their knowledge of the Former Employees' employment agreements and the restrictive covenant obligations contained therein, Aqua Air and Frigibar intentionally and without justification targeted, recruited, and employed the Former Employees to perform the same and/or substantially similar roles to that which they performed at Dometic. As a direct and proximate result of Aqua Air's and Frigibar's intentional and unjustified conduct, the Former Employees were induced to breach the terms of their respective employment agreements with Dometic.

113.    In knowingly inducing the Former Employees to breach their respective employment agreements with Dometic, Aqua Air and Frigibar has engaged in improper and unjustified conduct. Among other things, Aqua Air has induced the Former Employees to breach their respective employment agreements for the purpose of improperly obtaining the Former Employees' knowledge of Dometic's confidential and proprietary information. Indeed, since Aqua Air began soliciting Dometic employees, it has expanded its product portfolio to include a variety

of new product lines that are the same or substantially the same as the product lines historically made and sold by Dometic.

114.    In addition, on information and belief, Aqua Air and Frigibar conspired with Fernandez and Nacius to misrepresent and obfuscate the true nature of their employment following their resignation from Dometic. Further, on information and belief, Aqua Air and Frigibar conspired with Barnette to obtain information on and solicit additional Dometic employees in breach of Dometic's employment agreements. Moreover, based on the repeated recruitment and hiring of Dometic's employees, Aqua Air and Frigibar are clearly engaged in a calculated campaign to interfere with Dometic's employment agreements so that Aqua Air and Frigibar can improperly gain access to Dometic's proprietary and confidential information.

115.    As a result of Aqua Air and Frigibar's tortious interference with the Former Employees' employment agreements, Dometic has suffered damages in an amount to be determined at trial.

116.    Additionally, Aqua Air and Frigibar's tortious interference has caused and will continue to cause irreparable injury to Dometic, for which there is no adequate remedy at law.

## COUNT V
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Against Aqua Air and Frigibar)

117.    Dometic realleges and incorporates the factual allegations set forth above.

118.    As set forth in detail above, the Former Employees were employed by Dometic and were therefore in a business relationship with Dometic.

119.    Aqua Air and Frigibar were aware that the Former Employees were employed by Dometic and were therefore aware that Dometic was in a business relationship with the Former Employees

120.    Despite this knowledge, Aqua Air and Frigibar intentionally and without justification interfered with Dometic's relationship with the Former Employees by targeting, recruiting, and employing the Former Employees to perform the same and/or substantially similar roles to that which they performed at Dometic. As a direct and proximate result of Aqua Air's and Frigibar's intentional and unjustified conduct, the Former Employees were induced to end their business relationship with Dometic.

121.    In knowingly inducing the Former Employees to end their business relationships with Dometic, Aqua Air and Frigibar has engaged in improper and unjustified conduct. Among other things, Aqua Air has induced the Former Employees to breach their respective employment agreements for the purpose of improperly obtaining the Former Employees' knowledge of Dometic's confidential and proprietary information. Indeed, since Aqua Air began soliciting Dometic employees, it has expanded its product portfolio to include a variety of new product lines that are the same or substantially the same as the product lines historically made and sold by Dometic.

122.    In addition, on information and belief, Aqua Air and Frigibar conspired with Fernandez and Nacius to misrepresent and obfuscate the true nature of their employment following their resignation from Dometic. Further, on information and belief, Aqua Air and Frigibar conspired with Barnette to obtain information on and solicit additional Dometic employees to end their business relationships with Dometic. Moreover, based on the repeated recruitment and hiring of Dometic's employees, Aqua Air and Frigibar are clearly engaged in a calculated campaign to end the business relationships that Dometic has with its employees so that Aqua and Frigibar can improperly gain access to Dometic's proprietary and confidential information.

123.     As a result of Aqua Air and Frigibar's tortious interference with Dometic's business relationship with the Former Employees, Dometic has suffered damages in an amount to be determined at trial.

124.     Additionally, Aqua Air and Frigibar's tortious interference has caused and will continue to cause irreparable injury to Dometic, for which there is no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, having alleged this Complaint against Defendants Barnette, Fernandez, Nacius, Aqua Air, and Frigibar, Dometic requests that the Court award the following relief:

(a)     A judgment in its favor and against Defendants on all counts;

(b)     An award of damages in an amount to be determined, but in excess of $75,000.00, together with pre- and post-judgment interest thereon at the maximum legal rate;

(c)     Preliminary and permanent orders restraining and enjoining Barnette, Fernandez, Nacius, Aqua Air, and Frigibar from any use or disclosure of Dometic's confidential information;

(d)     Preliminary and permanent orders restraining and enjoining Fernandez and Nacius from working for Aqua Air and Frigibar or any other competitor of Dometic for at least one (1) year following the date of his resignation from Dometic;

(e)     Preliminary and permanent orders restraining and enjoining Barnette from directly or indirectly soliciting any of Dometic's employees to cease their employment with Dometic so as to work for or with Aqua Air or Frigibar;

(f)     An award of punitive damages and/or penalties as provided for by applicable law;

(g)     An award of attorney's fees and costs pursuant to the Barnette, Fernandez, and Nacius Agreements; and

(h)     Any other award of such relief as the Court may deem just or proper.

## JURY DEMAND

Dometic demands a jury trial on all issues in this action.

Dated: May 20, 2025

Respectfully submitted,

COZEN O'CONNOR

By: _Erica Rutner_

Erica W. Rutner / Fla. Bar No. 70510
E-mail: erutner@cozen.com
Michael R. Puretz / Fla. Bar No. 1049699
E-mail: mpuretz@cozen.com
Maria Ermakova / Fla. Bar No. 1056797
E-mail: mermakova@cozen.com
COZEN O'CONNOR
1801 N Military Trail, Suite 200
Boca Raton, Florida 33431
Telephone: 561-245-6120
          --and--
COZEN O'CONNOR
200 South Biscayne Blvd., Suite 3000
Miami, Florida 33131
Telephone: 212-883-4902
**Counsel for Plaintiff**